UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Civil No. 02-2013(DSD/SRN)

Twin Cities Galleries, LLC,
Larry J. DiGiovanni, and
Susan M. DiGiovanni,

        Petitioners,

v.                                              **ORDER**

Media Arts Group, Inc.,
Lightpost Publishing, Inc.,
Magi Sales, Inc., Richard
F. Barnett, Thomas Kinkade
and Kenneth E. Raasch,

        Respondents.

    J. Michael Dady, Esq., Danell K. Olson, Esq., John D. Holland, Esq. and Dady & Garner, P.A., 80 South Eighth Street, Minneapolis, MN 55402 and Jeffery S. Haff, Esq. and Haff & Associates, 3410 Fourth Avenue South, Suite 950, Minneapolis, MN 55415, counsel for petitioners.

    Craig P. Miller, Esq., and Gray, Plant, Mooty, Mooty & Bennett, P.A., 80 South Eighth Street, Suite 500, Minneapolis, MN 55402; Craig S. Rutenberg, Esq. and Alschuler, Grossman, Stein & Kahan, Fourth Floor, N Tower, 1620 26th Street, Santa Monica, CA 90404; Janel E. LaBoda, H.B. Fuller Company, P.O. Box 64683, St. Paul, MN 55164, counsel for respondents.

This matter is before the court pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 1-16, and upon petitioners' motion to vacate a final arbitration award and respondents' motion to confirm a final arbitration award. Based upon a review of the file, record and proceedings herein, and for the reasons stated, the court vacates the arbitration award.

**BACKGROUND**

On July 29, 2002, petitioners Twin Cities Galleries, LLC, Larry J. DiGiovanni and Susan M. DiGiovanni filed a lawsuit against respondents Media Arts Group, Inc., Lightpost Publishing, Inc., MAGI Sales, Inc., Richard Barnett, Thomas Kinkade and Kenneth Raasch. The lawsuit arose out of four dealer agreements entered into between Twin Cities Galleries and Media Arts Group to open and operate four Thomas Kinkade Signature Galleries. (See Holland Aff. Exs. 1-4.) In September of 2002, pursuant to an arbitration clause contained in each of the four agreements, Media Arts Group commenced binding arbitration proceedings in California to obtain payments on various amounts owed by Twin Cities Galleries.[1] The court stayed the Minnesota lawsuit pending arbitration.

Petitioners reasserted all of the claims they initially filed in federal court to the American Arbitration Association Panel ("Panel"). Respondents subsequently moved the Panel to dismiss several of petitioners' claims, including those brought under the Minnesota Franchise Act (MFA). See Minn. Stat. §§ 80C.01-.30. Respondents argued, inter alia, that the MFA claims were subject to dismissal because California law governed the parties' dispute pursuant to the choice-of-law provisions contained in each of the four dealer agreements.

---

[1] Neither party disputes the validity or enforceability of the arbitration clauses contained in each of the four dealer agreements.

Following extensive briefing on the issue, in June of 2004 a Panel majority granted respondents' motion to dismiss. (See Holland Aff. Ex. 15.) In doing so, the Panel interpreted the scope of the choice-of-law provisions and concluded that California law governed all claims. As to the petitioners' MFA claims, the Panel engaged in a choice-of-law analysis. Petitioners argued that application of the MFA rendered the parties' choice of California law void. However, the Panel reasoned that to the extent the anti-waiver provision of the MFA voided the parties' choice of California law, it was preempted by the Federal Arbitration Act ("FAA"). Accordingly, the Panel dismissed petitioners' MFA claims.

On February 22, 2005, a Panel majority denied the remainder of petitioners' claims on the merits. (Id. Ex. 18.) On May 3, 2005, the Panel issued a Final Award in favor of Media Arts Group and reiterated the denial of petitioners' claims. (Id. Ex. 19.) Petitioners now move the court, pursuant to 9 U.S.C. § 10, to vacate the Final Award based on the Panel's dismissal of the MFA claims. Respondents move the court, pursuant to 9 U.S.C. § 9, to confirm the Final Award and enter judgment thereon.

**DISCUSSION**

**I. Standard of Review**

The parties' motions are properly before the court pursuant to the Federal Arbitration Act ("FAA"). See Cortez Byrd Chips, Inc.

3

v. Bill Harbert Constr. Co., 529 U.S. 193, 195 (2000); Marine Transit Corp. v. Dreyfus, 284 U.S. 263, 275-76 (1932). The court accords a final arbitration award an "extraordinary level of deference" and is not authorized to review the merits of the award even when parties allege that the award rests on serious error. Stark v. Sandberg, Phoenix & von Gontard, P.C., 381 F.3d 793, 798 (8th Cir. 2004). The court may not substitute judicial resolution of disputed issues for an arbitrator's decision. United Paperworkers Int'l Union v. Misco, Inc., 484 U.S. 29, 40-41 n. 10 (1987); Gas Aggregation Services, Inc. v. Howard Avista Energy, LLC, 319 F.3d 1060, 1064 (8th Cir. 2003). Once parties submit a dispute to arbitration, the merits of the resulting arbitration award simply are not within the purview of the court. Gas Aggregation, 319 F.3d at 1064. The court must confirm an award so long as an arbitrator "even arguably" construes or applies the underlying contract. Stark, 381 F.3d at 798.

Arbitration awards, however, are not inviolate and the court need not merely rubber stamp the arbitrators' interpretations and decisions. Id. Pursuant to the FAA, the court may vacate an arbitration award if (1) the award was procured by corruption or fraud, (2) there is a showing of evident partiality or corruption by the arbitrators, (3) the arbitrators engaged in misconduct or (4) the arbitrators exceeded their authority. See 9 U.S.C. § 10(a)(1-4); Hoffman v. Cargill Inc., 236 F.3d 458, 461 (8th Cir.

4

2001). Additionally, three judicially recognized grounds for vacating an arbitration award also exist. First, a court may set aside an award that is "completely irrational." Hoffman, 236 F.3d at 461 (internal quotations omitted). Second, a court may set aside an award that "evidences a manifest disregard of the law." Id. (internal quotations omitted). Third, a court may vacate an arbitration award that expressly conflicts with a "well defined and dominant" public policy. Misco, 484 U.S. at 43 (quoting W.R. Grace & Co. v. Local Union 759, 461 U.S. 757, 766 (1983)); PaineWebber, Inc. v. Agron, 49 F.3d 347, 350 (8th Cir. 1995). If vacating an arbitration award is warranted, the court must vacate the award in its entirety. Stark, 381 F.3d at 799.

**II. Petition to Vacate**

Petitioners argue that the court should vacate the Final Award because (1) the Panel's dismissal of the MFA claims constituted a manifest disregard of the law, (2) the Panel engaged in arbitrator misconduct by unjustifiably refusing to hear evidence of their MFA claims and (3) the Panel's dismissal of the MFA claims violated Minnesota public policy.

**A. Manifest Disregard of the Law**

Petitioners argue that the Panel's failure to apply the express language of Minnesota Statutes section 80C.21 evidenced manifest disregard of the law. However, manifest disregard of the law requires more than an error of law. Lincoln Nat'l Life Ins.

5

Co. v. Payne, 374 F.3d 672, 675 (8th Cir. 2004). The court discerns an arbitrator's interpretation of the law, which is insulated from review, from an arbitrator's disregard of the law, which opens the door to judicial scrutiny. Hoffman, 236 F.3d at 462 (citing Stroh Container Co. v. Dephi Indus. Inc., 783 F.2d 743, 750 (8th Cir. 1986)). An arbitral decision evidences manifest disregard of the law if the arbitrators clearly identify "the applicable governing law and then proceed to ignore it." Id. at 461. To warrant being vacated, the contract must not even be "susceptible of the arbitrator's interpretation." Id. at 462.

In this case, the Panel was aware that section 80C.21 specifically voids a choice-of-law provision that purports to bind a Minnesota franchisee into waiving compliance with the MFA. (See Holland Aff. Exs. 11, 15.) However, the Panel engaged in a choice-of-law analysis and held that California law governed the parties dispute because Minnesota did not have a materially greater interest in the matter than did the state of California. (See id. Ex. 15.) The Panel further reasoned that the FAA preempted any application of the MFA's anti-waiver provision that would render the parties' choice of California law unenforceable. The Panel's decision did not evidence a manifest disregard of the law. See Payne, 374 F.3d at 675. Therefore, the court will not vacate the award on that ground.

6

**B.   Arbitrator Misconduct**

Petitioners next claim that the Panel engaged in arbitrator misconduct by refusing to hear evidence relevant to their MFA claims.  The court may vacate an arbitration award based on misconduct if an arbitrator refuses "to hear evidence pertinent and material to the controversy."  9 U.S.C. § 10(a)(3); Misco, 484 U.S. at 41.  However, to warrant vacating an award, the refusal to hear evidence must either be in bad faith or "so gross as to amount to affirmative misconduct."  Misco, 484 U.S. at 40.

Petitioners argue that the Panel should have considered the evidence that they offered in support of their argument that they paid a "franchise fee," as that term is defined by the MFA.  See Minn. Stat. § 80C.01, subd. 9.  The Panel did not entertain evidence regarding petitioners' MFA claims because the Panel had dismissed those claims based upon the conclusion that California law governed the dispute.  The Panel did consider the majority of the evidence that petitioners allude to as it related to the issue of whether petitioners paid a "franchise fee," as that term is defined by the California Franchise Investment Law.  See Cal. Corp. Code § 31005(a)(3), 31011(a).  Further, the court finds that even if the Panel did ignore such evidence, petitioners have failed to show bad faith on the part of the arbitrators or conduct "so gross

7

as to amount to affirmative misconduct." <u>Misco</u>, 484 U.S. at 40. Therefore, the court will not vacate the award on the ground of arbitrator misconduct.

**C.   Minnesota Public Policy**

Lastly, petitioners argue that the Panel's dismissal of their MFA claims is contrary to Minnesota's public policy of protecting its citizens and franchisees from deception and misconduct arising out of the sale of franchises. The judicially created public policy exception to the general rule of judicial deference to arbitral decisions is narrow. <u>W.R. Grace & Co.</u>, 461 U.S. at 766; <u>PaineWebber</u>, 49 F.3d at 350. Under the public policy exception, the court need not defer to an arbitrator's interpretation if it violates an "explicit public policy." <u>Misco</u>, 484 U.S. at 43; <u>W.R. Grace</u>, 461 U.S. at 766. The question of public policy is ultimately to be resolved by the court. <u>W.R. Grace</u>, 461 U.S. at 466; <u>Iowa Elec. Light & Power Co. v. Local Union 204</u>, 834 F.2d 1424, 1427 (8th Cir. 1987). Contrary to the standard of review applicable to the other grounds for vacating an arbitration award, once the public policy question is raised the court takes the facts as found by the arbitrator but reviews the legal conclusions de novo. <u>Iowa Elec.</u>, 834 F.2d at 1427. If an arbitral panel interprets a contract in a manner violative of explicit policy, the court is "'obliged to refrain from enforcing it.'" <u>Id.</u> (quoting <u>W.R. Grace & Co.</u>, 461 U.S. at 766).

8

A party may properly challenge an arbitration award on the grounds that public policy prohibits individuals from waiving certain statutory remedies. See Larry's United Super, Inc. v. Werries, 253 F.3d 1083, 1086 (8th Cir. 2001). However, the ability to reverse on policy grounds does not authorize "a broad judicial power to set aside arbitration awards." Misco, 484 U.S. at 43. The arbitral award must create an "explicit conflict" with a "well defined and dominant" public policy as evidenced by law or legal precedent and not general considerations of public interest. Misco, 484 U.S. at 43; W.R. Grace, 461 U.S. at 766. The court must look to federal or state statutes, regulations and judicial decisions to ascertain whether a policy is sufficiently well defined and dominant to warrant vacating a contrary arbitration award. PaineWebber, 49 F.3d at 352. The public policy inquiry is not limited to a particular substantive area of law. Id. at 350. Further, the policy violated may be ascertained on a state, as opposed to a national, level. See Ace Elec. Contractors, Inc. v. Int'l Bhd. of Elec. Workers Local 292, 414 F.3d 896, 903 (8th Cir. 2005)(bargaining agreement violated Minnesota policy as articulated by Minnesota Human Rights Act); see also MidAmerican Energy Co. v. Int'l Bhd. of Elec. Workers Local 499, 345 F.3d 616, 621 (8th Cir. 2003) (looking to Iowa state regulations of natural gas).

The court realizes that the Panel's interpretation of the contracts' choice-of-law provisions is insulated from review. <u>Hoffman</u>, 236 F.3d at 462. However, in this case, the Panel's interpretation of the choice-of-law provision is inextricably intertwined with the policy question raised by petitioners that would ultimately void the choice-of-law provision. Thus, the court must balance its obligation to tread lightly in reviewing the merits of the Panel's choice-of-law analysis with its obligation to refrain from enforcing an arbitral award that violates an explicit public policy. <u>See</u> <u>Iowa Elec.</u>, 834 F.2d at 1427. The court will first ascertain whether Minnesota has established a well defined and dominant public policy in favor of protecting its franchisees and then address the more nuanced question of whether the existence of any such policy warrants vacating the Final Award. <u>See</u> <u>PaineWebber</u>, 49 F.3d at 351.

The MFA was passed with the remedial purpose of protecting Minnesota franchises from unfair contracts. <u>Pac. Equip. & Irrigation, Inc. v. Toro Co.</u>, 519 N.W.2d 911, 916 (Minn. Ct. App. 1994). The MFA originally contained the following anti-waiver provision:

> Any condition, stipulation or provision purporting to bind any person acquiring any franchise to waive compliance with any provision of [the Minnesota Franchise Act] or any rule or order thereunder is void.

Minn. Stat. § 80C.21 (1988). In 1989, the Eighth Circuit recognized, in the context of a choice-of-law analysis, that the MFA undeniably evinces a "policy in favor of offering franchisees in Minnesota remedies greater than those available under traditional common law." Modern Computer Sys., Inc. v. Modern Banking Sys., Inc., 871 F.2d 734, 740 (8th Cir. 1989) (en banc). However, the court proceeded to find that such a policy was not sufficiently fundamental to overpower Minnesota's countervailing policy of enforcing parties' choice-of-law agreements. Id. (adopting the approach set forth by the Sixth Circuit in Tele-Save Merch. Co. v. Consumers Distrib. Co., 814 F.2d 1120 (6th Cir. 1987)); see also Carlock v. Pillsbury Co., 719 F. Supp. 791, 810 (D. Minn. 1989) (holding that parties' choice of New York law was not repugnant to Minnesota public policy).

In response to Modern Computer Systems, the Minnesota legislature promptly amended the MFA's anti-waiver provision to explicitly clarify that any choice-of-law provision that waives the rights afforded a Minnesota franchisee under the MFA is void. Minnesota Statutes section 80C.21, as amended, now reads as follows:

> Any condition, stipulation or provision, *including any choice of law provision*, purporting to bind any person who, at the time of acquiring a franchise is a resident of this state, or, in the case of a partnership or corporation, organized or incorporated under the laws of this state, or purporting to bind a person acquiring any franchise to be

11

>  operated in this state to waive compliance or which has the effect of waiving compliance with any provision of [the Minnesota Franchise Act] or any rule or order thereunder is void.

See 1989 Minn. Laws ch. 198 § 2 (emphasis added). The Minnesota legislature specifically stated that the amendment was intended to restate and clarify Minnesota legislative intent.[2]  Id. § 3. The Minnesota Rules further deem it an unfair and inequitable practice to require any franchisee to waive any rights provided to them by the laws of Minnesota. See Minn. R. 2860.4400(J).

Since the MFA's anti-waiver provision was amended, the Minnesota courts have recognized that to "further the legislature's policy of protecting Minnesotans" the courts would not give preclusive effect to a contractual choice-of-law provision. Banbury v. Omnitrition Int'l, Inc., 533 N.W.2d 876, 880 (Minn. Ct. App. 1995); see also Hagstrom v. Am. Circuit Breaker Corp., 518 N.W.2d 46, 48 (Minn. Ct. App. 1994) (the 1989 legislative amendment "evinces an unwillingness to allow parties to contractually designate another state's law"); Healy v. Carlson Travel Network Assocs., Inc., 227 F. Supp. 2d 1080, 1085-87 (D. Minn. 2002) (reconciling anti-waiver provisions of MFA and Illinois Franchise

---

[2] The Eighth Circuit has twice had occasion to revisit the issue following the statute's amendment. However, the contracts before the court on both occasions had been executed prior to 1989 and the court did not give the amendment retroactive effect. See Commercial Prop. Invs., Inc. v. Quality Inns Int'l, Inc., 938 F.2d 870, 874 (8th Cir. 1991) (affirming district court's dismissal of MFA claims based on contractual choice-of-law provision); TCBY Sys., Inc. v. RSP Co., 33 F.3d 925, 930 (8th Cir. 1994) (same).

Disclosure Act to hold Illinois franchisee could not contract away benefits of Iowa franchise law). In light of the express amendment to the MFA's anti-waiver provision, the relevant legislative intent, statutory and regulatory language and case law, the court finds that the laws and legal precedent of the state of Minnesota affirmatively establish an explicit, well defined and dominant public policy to protect Minnesota franchisees. To further that policy, the state of Minnesota renders void any contractual provision designed to preclude its franchisees from the protections afforded by the MFA.[3] See Minn. Stat. § 80C.21.

Whether Minnesota's policy to protect its franchisees warrants vacating the Final Award, however, is a novel question. Several circuits have addressed the issue of whether a state's franchise act expresses fundamental public policy, but none have done so in the context of a motion to vacate an arbitration award. See, e.g., Volvo Constr. Equip. N. Am., Inc. v. CLM Equip. Co., 386 F.3d 581, 607-10 (4th Cir. 2004) (anti-waiver provision of Arkansas Franchise Act evinces fundamental public policy while Louisiana Dealer Act does not); Cromeens, Holloman, Sibert, Inc. v. AB Volvo, 349 F.3d

---

[3] Respondents argue that the Panel's application of the California Franchise Investment Law did not violate Minnesota public policy because the two acts are substantially similar in the protections afforded to franchisees. However, the court finds that the similarity of protections afforded by the respective franchise acts does not alter, from a policy perspective, the view that Minnesota franchisees are not to be contractually precluded from the protections of the MFA. See Banbury, 533 N.W.2d at 880.

376, 391 (7th Cir. 2003) (Maine Franchise law expresses strong public policy against enforcement of countervailing choice-of-law provisions); Banek Inc. v. Yogurt Ventures U.S.A., Inc., 6 F.3d 357, 360 (6th Cir. 1993) (noting that Michigan franchise law is not as strongly worded as Minnesota law and therefore did not evince public policy strong enough to void choice-of-law provisions); Wright-Moore Corp. v. Ricoh Corp., 908 F.2d 128, 132 (7th Cir. 1990) (enforcing contractual choice of New York law would be contrary to Indiana public policy where Indiana franchise statute contained anti-waiver provision); Modern Computer Sys., 871 F.2d at 740; Tele-Save Merch. Co., 814 F.2d at 1123 (Ohio Business Opportunity Plans Act did not embody public policy when contract was freely negotiated between parties of equal bargaining power).

The court finds that the procedural context in which petitioners raise this policy, that is, by challenging an arbitration award, does not alter the determination that Minnesota has expressly declared that any choice-of-law provision purporting to bind a Minnesota franchisee from waiving compliance with the MFA is void. See Minn. Stat. § 80C.21. The Panel's dismissal of all petitioners' MFA claims based on the parties' choice of California law directly contradicts Minnesota public policy as set forth by the MFA's anti-waiver provision. Therefore, the court finds that Minnesota's policy of protecting its franchisees, "as it relates to the panel award at issue," was violated. PaineWebber, 49 F.3d at

350. To allow respondents to contractually preclude petitioners from the protections of the MFA is precisely what the Minnesota legislature intended to prevent in amending the MFA in 1989 to specifically void any such provision.[4]

Respondents argue that vacating the arbitration award would be contrary to the established "federal policy favoring arbitration." See Shearson/Am. Express, Inc. v. McMahon, 482 U.S. 220, 226 (1987). The court disagrees. Petitioners do not seek to avoid arbitration but rather to submit the substantive rights afforded to them by the MFA for arbitral resolution. By agreeing to submit their claims to arbitration, petitioners should not be required to forgo the substantive rights afforded them by the MFA. See Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 628 (1985). Further, respondents' reliance on Medika Int'l, Inc. v. Scanlan Int'l, Inc., 830 F. Supp. 81 (D.P.R. 1993), is inapposite. In Medika, in the context of enforcing an agreement to arbitrate, the court held that the FAA preempts the Puerto Rico Dealers' Act "to the extent it negates, as against public policy, arbitration clauses which provide for arbitration of controversies outside of Puerto Rico." 830 F. Supp. at 84. Respondents have not

---

[4] The merits of petitioners' MFA claims are not before the court. However, the court notes that on May 6, 2005, the Minnesota Commissioner of Commerce issued a cease and desist order to respondent Media Arts Group, doing business as the Thomas Kinkade Company, upon a finding that Media Arts Group had engaged in the unregistered offer and sale of franchises to petitioners in direct violation of the MFA. (See Holland Aff. Ex. 22.)

15

identified a similar provision of the MFA that purports to negate an agreement to submit MFA claims to arbitration. To the contrary, Minnesota Rule 2860.4400(J) specifically states that nothing therein, which would include the MFA's anti-waiver provision, shall bar "an exclusive arbitration clause." See Minn. Stat. § 80C.17; Minn. R. 2860.4400.[5]

Respondents further argue that the FAA preempts application of the MFA's anti-waiver provision. See Southland Corp. v. Keating, 465 U.S. 1 (1984) (the California Franchise Investment Law's requirement of a judicial forum for resolution of claims brought thereunder, as interpreted by the California Supreme Court, was preempted by FAA). Congress enacted the FAA to "foreclose state legislative attempts to undercut the enforceability of arbitration agreements." Id. at 17. However, although the FAA preempts state laws that limit selection of an arbitral forum, "it does not broadly preempt substantive state law rights." Arkcom Digital Corp. v. Xerox Corp., 289 F.3d 536, 539 (8th Cir. 2002) (citing

---

[5] In Seymour v. Gloria Jean's Coffee Bean Franchising Corp., the court held that Minnesota Rule 2860.4400(J) was "intended to prohibit pre-dispute agreements to arbitrate." See 732 F. Supp. 988, 992 (D. Minn. 1990). However, at the time of the Seymour decision, Minnesota Rule 2860.4400(J) provided only that "this part shall not bar a voluntary arbitration of any matter." Id. at 991. Further, Seymour is procedurally and substantively distinguishable because it arose from a challenge to the enforceability of an arbitration agreement as well as a rider which specifically retained to the franchisees "the right to submit matters to the jurisdiction of the courts of Minnesota." Id. at 990. In this case, petitioners do not challenge the enforceability of the arbitration agreement and do not seek a judicial forum.

Great Western Mtg. Corp. v. Peacock, 110 F.3d 222, 230 (3d Cir. 1997)).  The preemptive effect of the FAA is limited to the narrow question of arbitrability.  Peacock, 110 F.3d at 230.  Therefore, absent a state law, the effect of which is to discourage the enforcement of an arbitration agreement, no question of preemption exists.  Id.  The court finds nothing in the substantive rights afforded by the MFA, or its anti-waiver provision protecting those rights, to be procedurally unfavorable to arbitration.  Furthermore, and fatal to respondents' preemption argument, no dispute exists in this case regarding the enforceability of the arbitration agreements or the arbitrability of petitioners' MFA claims.  Therefore, the court concludes that the FAA does not preempt the MFA's anti-waiver provision to the extent that Minnesota Statutes section 80C.21 secures for Minnesota franchisees the ability to submit their MFA claims to an arbitral forum.

To allow respondents to utilize a choice-of-law provision to contract out of liability for noncompliance with the MFA would circumvent the very purpose of the MFA's anti-waiver provision and would be in contravention of a well defined and dominant Minnesota public policy.  Therefore, the court finds that vacating the Final Award as violative of Minnesota public policy is warranted in this case and grants petitioners' motion to vacate the Final Award.  As a result, respondents' motion to confirm the Final Award and enter judgment thereon is denied.

**CONCLUSION**

Accordingly, **IT IS HEREBY ORDERED** that:

1. Pursuant to 9 U.S.C. § 10, petitioners' motion to vacate the arbitrator's final award [Docket No. 36] is granted.

2. Pursuant to 9 U.S.C. § 9, respondents' motion to confirm the arbitrator's final award [Docket No. 43] is denied.

3. Petitioners' Minnesota Franchise Act claims shall be submitted to a panel of the American Arbitration Association for resolution on their merits pursuant to the parties' respective agreements to arbitrate.

Dated: February 13, 2006

s/David S. Doty
David S. Doty, Judge
United States District Court
